UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| C. COYLE PACKAGING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10 CV 462 HEA |
| | ) | |
| GRM PACKAGING INC., et. al., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs C. Coyle Packaging, LCC and Christopher Coyles' (collectively, "plaintiffs") Joint Motion for Summary Judgment [ECF No. 24]. Defendants GRM Packaging, Inc. and Guy Montgomery[1] (collectively, "defendants") oppose the Motion and have filed a written opposition thereto, to which plaintiffs have replied. Additionally, Defendant Guy Montgomery filed a Motion for Summary Judgment [ECF No. 25]. Plaintiffs oppose the Motion and have filed written opposition thereto, to which Montgomery has replied. Defendants have also filed a Motion to Strike Affidavit of Christopher J. Coyle [ECF No. 30]. Plaintiffs oppose the Motion and have filed written opposition thereto, to which defendants have replied. Additionally,

---

[1] On August 10, 2011, the Court entered an Order [ECF No. 54] substituting Frank Magnani, executor of the Estate of guy R. Montgomery, for Defendant Guy R. Montgomery due to the passing of Montgomery during the course of this litigation.

Defendants filed a Joint Motion to Dismiss Purusant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 60]. Plaintiffs oppose the Motion and have filed written opposition thereto, to which Defendants have replied. In the interest of judicial economy, the Court will now address all four of the motions below.

## I.   Facts and Background

This action was commenced by Plaintiffs Christopher Coyle and C. Coyle Packaging, LLC. Both plaintiffs are Missouri residents. Plaintiffs brought their claims against GRM Packaging, Inc. ("GRM") and Guy Montgomery ("Montgomery"). Both defendants are Texas residents. Defendant GRM is a Texas corporation whose principal office and place of business is in Dallas, Texas. Montgomery is the sole shareholder, director, and President of GRM. GRM was formed in 1986 and since that time has served as a broker or representative of numerous manufacturers and end-users of flexible packaging materials.

On November 1, 2002 an agreement was entered into in which Christopher Coyle was hired as an employee of GRM to assist in servicing certain GRM accounts. Specifically, Mr. Coyle was assigned to assist GRM in servicing the Ralcorp "instant oats" account with Alcan Packaging Food & Tobacco, Inc. ("Alcan"). In July of 2004, Mr. Coyle also began servicing GRM's Nestle Purina

2

"pet-food" account with Polytex Fibers Corp. ("Polytex"). The written broker agreements for those two accounts were between GRM and Alcan and Polytex, respectively. The Alcan Broker Agreement was terminated effective May 19, 2009. The Polytex Broker Agreement was terminated by Polytex in July 2008 during the course of a lawsuit that GRM had filed against Polytex in the 44th Judicial District Court of Dallas County, Texas. GRM and Polytex entered into a written Settlement Agreement and Full and Final Release of All Claims dated effectively July 31, 2009, whereby the parties settled their disputes in the Polytex lawsuit.

Count I of Plaintiffs' First Amended Complaint states a claim for breach of the November, 2002 contract. Count II asserts a claim against Defendants for *quantum meruit* or implied contract. Count III of Plaintiffs' First Amended Complaint alleges that Defendants made transfers in fraud of its creditors.

## II.  Summary Judgment Standard

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of*

*Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."

*Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

### A. *Plaintiffs' Joint Motion for Summary Judgment*

Plaintiffs contend that Defendants have collected substantial commissions from two customers–Alcan and Polytex–procured and serviced for Defendants by Plaintiffs, but have failed to pay Plaintiffs 60% of those commissions pursuant to the agreement of the parties. They allege that the total amount of commissions due to Plaintiffs equals $737,054.88. The amount in question is derived from 60% of $1,228,424.81 in funds GRM received from Alcan and Polytex.

In support of their theory, Plaintiffs cite to a clause in the November 2002 Agreement, the Polytex and Alcan Broker Agreements, and various correspondences between the parties. Paragraph 8 of the November 2002 Agreement specifically states the following:

> 8. Need to determine a severance agreement... It would be based on a percentage of the business CC contributed for a period of time. Expenses to maintain that business would be one factor.

6

Under the Alcan Broker Agreement, Exhibit C, GRM was entitled to continue to receive commissions after receiving notice of termination "...for a period of six months for orders placed after the termination of this Agreement." Under the Polytex Broker Agreement, Exhibit D, GRM was entitled to receive a "5% commission on the net sales." In the event of a termination, the Agreement provided that "Polytex will continue to pay GRM commissions for one (1) year, (18 months from the termination) on all orders entered and accepted by Polytex ... through the end of the commission period."

Additionally, Plaintiffs direct the Court's attention to a January 2007 correspondence, Exhibit G, in which Defendant Montgomery signed and stated, in relevant part:

> So you have a record-GRM owes you 60% of the commissions received from Polytex and Alcan Packaging if I die or become incapacitated.

Defendants contend that aforementioned $1,228,424.81 in payments from Alcan and Polytex were not sales commissions; therefore, Plaintiffs are not entitled to a percentage of the funds. Defendants claim that funds were "lawsuit settlement payments" and "contract termination payments" that GRM received from Polytex and Alcan respectively. They allege that these payments were

received a considerable time–"months (if not years)"–after Plaintiffs' alleged agreements or relationships with Defendants were terminated in August 2008.

Viewing the evidence in the light most favorable to Defendants Montgomery and GRM and giving them the benefit of all reasonable inferences, there are genuine issues of material fact regarding the designation of the Alcan and Polytex payments. *See Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). As stated above, the Polytex Broker Agreement was terminated by Polytex in July 2008 during the course of a lawsuit that GRM had filed against Polytex in the 44th Judicial District Court of Dallas County, Texas. Without any evidence to the contrary, it is certainly conceivable that the Polytex's payment to GRM was not a true commission but a lawsuit settlement payment. Likewise, Plaintiffs have failed to show that there is no issue of material fact regarding the designation of the Polytex payment. Plaintiffs summarily states that the funds Polytex sent to GRM were commissions covered under the Broker Agreement, but offer no documentation that delineates the nature of the funds or from where they were derived. As such, there are genuine issues of material fact regarding the designation of the Alcan and Polytex payments; therefore, summary judgment is not appropriate in this instance. For the same reasons stated above, summary judgment is not appropriate for Plaintiffs' Count II–*quantum meruit* claim.

### B. *Defendant Guy Montgomery's Motion for Summary Judgment*

Defendant Montgomery contends in his summary judgment motion that he is entitled to judgment as a matter law because Plaintiffs' claims in this action, if any, are solely against GRM Packaging and not against Montgomery individually or personally as the officer or shareholder of that corporation. Plaintiffs argue that GRM Packaging has immersed itself into some sort of identity crisis due to its name designation on certain contractual dealings. Plaintiffs allege that while Montgomery may have been legally authorized from 1989 to 1999 to enter into contracts and otherwise conduct business on behalf of GRM Packaging, Inc. under the assumed name of GRM, Inc., his authorization to do so expired as a matter of law in January, 1999, .

In support of their argument that Montgomery may be held individually liable, Plaintiffs rely on Texas case law–specifically *Fish v. Tandy Corporation,* 948 SW 2d 886 (Tex.App-Fort worth 1997).[2] Under *Fish*, a promoter, despite purporting to act on behalf of projected corporation, cannot be treated as corporation's agent, as nominal principal is not yet in existence, and thus, where there is nothing more than contract by promoter, in which he undertakes to bind

---

[2] Because Texas is the state with the most significant contacts, and substantial relationship to the parties' dispute, Texas law will govern the issues in this suit.

future corporation, it is generally conceded that it cannot be enforced. *Id.* at 898-899. While Plaintiffs manage to cite solid Texas law, its efforts to apply the law are misguided here. At issue is the applicability of *Fish* in this specific context now before the Court. Plaintiffs' Memorandum in Opposition to Montgomery's Motion for Summary Judgment openly accepts the fact that Montgomery was legally authorized from 1989 to 1999 to enter into contracts and otherwise conduct business on behalf of GRM Packaging, Inc. under the assumed name of GRM, Inc.. *See* Doc. 28 at 3. Therefore, citing case law that deals with promoters entering into contracts when the represented corporation has not yet been formed misses the mark.

More on point to this argument is the well established principle regarding liability for corporate acts: Where a corporation enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract. *Redmon v. Griffith*, 202 S.W.3d 225, 239. *See also Robertson v. Bland* 517 S.W.2d 676, 678 (Tex.Civ.App.-Houstin [1st Dist.] 1974, writ dism'd). The Agreement in question is specifically titled "GRM, INC. EMPLOYMENT AGREEMENT" ("Employment Agreement"). *See* Exh. E attached to Doc. #27. Below Montgomery's signature line on the contract, it reads "Guy Montgomery, GRM,

Inc.". It is clear to the Court that Montgomery had no intention to bind himself, in an individual capacity. Instead the Employment Agreement clearly reflects that Montgomery was executing the contract on behalf of GRM–regardless of whether it read "GRM, Inc." or "GRM Packaging." Plaintiffs' attempt to play word games with these terms is far from persuasive, and the Court warns Plaintiffs that such tactics could be detrimental to their case.

As such the summary judgment evidence presented by the parties clearly establishes that there are no genuine issues of disputed and controverted material facts that preclude entry of summary judgment in favor of Montgomery and against Plaintiffs. It is clear Montgomery was not subjecting himself to individual liability regardless of whether the term "GRM, Inc." or "GRM Packaging" was used.

### III. Defendants' Motion to Strike Affidavit of Christopher J. Coyle

In light of the Court's decision to grant summary judgment in favor of Guy Montgomery, the Court will deny Defendants' motion to strike Plaintiff Chris Coyle's affidavit with the condition that all references to "GRM" will be construed as a reference to GRM Packaging only, not Guy Montgomery individually.

### IV. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-70 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556) "Where a complaint pleads facts that are merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation mark omitted).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Id.* at 1950-51. These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

*Defendants' Motion to Dismiss Plaintiffs'*
*Count III – Transfers in Fraud of Creditors*

On September 20, 2011, the Court granted Plaintiffs leave to file their Second Amended Complaint. Said complaint added Count III, which alleged the following:

> "After the filing of the original Petition in this matter, Montgomery transferred substantially all of the assets of GRM Packaging, including the commissions and other payments received from Polytex and Alcan, which are claimed by Plaintiff in this action, to himself with the actual intent to hinder, delay and defraud Plaintiff's [sic] rights therein as a creditor, all in violation of Chapter 24 of the Texas Business and Commerce Code."

ECF No. 59, Paragraph 24.

Defendants move to dismiss Count III pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. They allege that the Amended Complaint does not state the circumstances constituting fraud with sufficient particularity and any claims of intentional fraudulent transfers should be dismissed for failure to comply with Fed. R. Civ. Proc. 8(a)(2) and Rule 9(b). Further, Plaintiffs claim that Count III should be dismissed under Fed. R. Civ. Proc. 12(b)(6) because it only contains conclusory allegations and lacks sufficient factual allegations establishing Plaintiffs' entitled for any relief.

The Court finds that Plaintiffs' Count III is nothing more than a "[t]hreadbare recital of the elements of a cause of action [that is] supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs fail to allege any relevant factual content regarding the alleged fraudulent transfers aside from stating the original source of the transfers were payments from Alcan and Polytex to Defendants. Furthermore, Plaintiffs fail to allege with particularity the circumstances constituting fraud as required under Rule 9(b) of the Fed. R. Civ. Proc.. As such, Defendants' Motion to Dismiss is granted; however, Plaintiffs will be granted leave to amend.

## V. Conclusion

For the reasons stated above, there are genuine issues of material fact regarding the designation of the Alcan and Polytex payments; therefore, Plaintiffs' Motion for Summary Judgment is denied. Further, there are no genuine issues of disputed and controverted material facts that preclude entry of summary judgment in favor of Montgomery and against Plaintiffs. As such, Defendant Guy Montgomery's Summary Judgment Motion is granted, as he cannot be subject to individual liability here. Additionally, Defendant's Motion to Strike Christopher Coyle's Affidavit is denied subject to the limitations explained by the Court. Finally, Defendants' Motion to Dismiss Count III is granted; however, the Plaintiffs are allowed leave to amend.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Joint Motion for Summary Judgment [ECF No. 24] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Guy Montgomery's Motion for Summary Judgment [ECF No. 25] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Motion Affidavit of Christopher J. Coyle [ECF No. 30] is **DENIED** subject to the limitations specified above.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Dismiss is **GRANTED.** Plaintiffs are granted leave to amend the Complaint within three (3) days of the date this Order.

Dated this 15th day of May, 2012.

*[signature]*

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE